# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| William A. Shell, II | **Civil Case No.:** |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Ally Financial Inc. *d/b/a* Ally Financial, United Auto Delivery and Recovery, Inc. *d/b/a* United Auto Recovery *d/b/a UAR* Nationwide, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

1.     Plaintiff William A. Shell, II alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code (UCC), Minn. Stat. § 336.9-609; and Minnesota Common Law.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C § 1692k and 28 U.S.C. §§ 1331 and 1367.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this Judicial District and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

3.     Plaintiff William A. Shell, II (hereinafter "Plaintiff") is a natural person, and citizen of the State of Minnesota.

4.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA.

5.      Plaintiff is a "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22).

6.      Defendant Ally Financial Inc. *d/b/a* Ally Financial (hereinafter "Ally") is a Michigan corporation with its principal place of business is located at 200 Renaissance Center, Detroit, Michigan, 48265.

7.      Defendant Ally is registered to do business in Minnesota under the assumed name Ally Financial.  CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of Defendant Ally at 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402.

8.      Defendant Ally is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

9.      Defendant United Auto Delivery and Recovery, Inc. *d/b/a* United Auto Recovery *d/b/a* UAR Nationwide (hereinafter "UAR") is a Tennessee corporation with its principal place of business located at 311 Moore Lane, Collierville, Tennessee 38017.

10.     Defendant UAR is registered to do business under the assumed names United Auto Recovery and UAR Nationwide.  Roger Stone is the registered agent authorized to accept service on behalf of Defendant UAR at 200 Jefferson Ave., Suite 1000, Memphis, Tennessee, 38103.

11.     According to Defendant UAR's website:

     a.   Defendant UAR "provides professional, industry leading repossession services . . . ." across the entire nation through "Nationwide Forwarding";

     b.   Defendant UAR "Already Handle[s] Large Nationwide Accounts"; and

     c.   Defendant UAR has "developed a network of affiliates who will get the results you expect. . . . you will be able to trust UAR for your nationwide repossession needs."

12.     Defendant UAR regularly uses the mail and telephone in a business, the principal purpose of which is the collection of debts and/or the enforcement of security interests.

13.     Defendant UAR regularly collects or attempts to collect debts for other parties and/or regularly enforces security interests for other parties.

14.     Defendant UAR is a "debt collector" as defined in the FDCPA. *See* 15 U.S.C. §§ 1692a(6) and 1692f(6).

15.     Defendant UAR was acting as debt collector with respect to the collection of Plaintiff's alleged debt and/or the enforcement of Defendant Ally's security interest as described in paragraphs 16-29.

## FACTUAL ALLEGATIONS

**THE MINNESOTA SECURITY AGREEMENT**

16.     On or around November 2013, Plaintiff purchased a 2010 Mercedes Benz CL Class (hereinafter "Vehicle") from Morrie's Automotive Group, Inc. in Minnetonka, Minnesota.

17.     In connection with purchasing the Vehicle, Plaintiff entered into a Minnesota Retail Installment Contract and Security Agreement (hereinafter the

"Agreement") pursuant to Minnesota's Motor Vehicle Retail Installment Sales Act,

Minn. Stat. §§ 53C.01, *et. seq.*

18.     The Agreement was contemporaneously assigned to Defendant Ally.

19.     Under the terms of the Agreement:

    a.  Plaintiff obtained a loan from Defendant Ally to finance the purchase of the Vehicle;

    b.  Plaintiff granted Defendant Ally a security interest in the Vehicle to secure repayment of the loan Defendant Ally issued to Plaintiff; and

    c.  Plaintiff was required to make 72 regular monthly installment payments in the amount of $1,231.01.

20.     The principal amount of the obligation under the Agreement is $66,726.81.

21.     The credit service charge under the Agreement is $21,905.91.

22.     The Agreement is a "consumer goods transaction" under Minn. Stat. §

336.9-102(a)(24).

23.     The Agreement is a "security agreement" under Minn. Stat. § 336.9-

102(a)(74).

24.     The Vehicle is a "consumer good" under Minn. Stat. § 336.9-102(a)(23).

25.     Plaintiff's obligations under the Agreement were incurred for personal,

family or household purposes.

26.     Plaintiff's Vehicle has Minnesota license plates and Minnesota registration.

In addition, Plaintiff has a Minnesota driver's license.

27.     The Agreement was not drafted or prepared by Plaintiff.

28.     The Agreement was provided to Plaintiff by Morrie's Automotive Group and/or Defendant Ally.

29.     The Agreement stated the following: "**Governing Law and Interpretation.**  This Contract is governed by the law of Minnesota and applicable federal law and regulations."  (emphasis in original).

**DEFENDANT ALLY'S APRIL 2016 REPOSSESSION**

30.     On or around April 2016, Plaintiff had fallen behind on his monthly payments under the Agreement.

31.     On or around April 2016, Defendant Ally hired a repossession company to acquire Plaintiff's Vehicle through self-help repossession.

32.     On or around April 2016, the repossession company arrived at 2106 Harriman Lane, Redondo Beach, California, 90278 (hereinafter "Harriman Lane Address") with a tow truck and conducted a self-help repossession of Plaintiff's Vehicle on behalf of Defendant Ally and at Defendant Ally's request.

33.     Thereafter, Plaintiff contacted Defendant Ally regarding the return or release of his Vehicle.  In order to verify the account, Defendant Ally asked Plaintiff to verify the address on the account.  Plaintiff provided Defendant Ally with the Harriman Lane Address.

34.     Although Plaintiff's Vehicle was repossessed at the Harriman Lane Address, Defendant Ally stated that it had 2617 Nelson Avenue, Apt. A, Redondo Beach,

California, 90278 (hereinafter "Nelson Avenue Address") listed as the address on the account.

35.     Plaintiff informed Defendant Ally: that he does not live at the Nelson Avenue Address; that he has never lived at the Nelson Avenue Address; and that he did not know how Defendant Ally obtained the Nelson Avenue Address.

36.     Defendant Ally informed Plaintiff that he needed to pay nearly $5,000 in order to obtain the Vehicle.  Upon information and belief, the amount was over $4,500, but less than $5,000.  The amount represented some past monthly payments, late fees, and costs associated with repossession.

37.     In addition, Defendant Ally informed Plaintiff that he would need to obtain a redemption release from the sheriff's office prior to releasing the Vehicle.

38.     Thereafter, Plaintiff paid Defendant Ally the requisite amount necessary to release the Vehicle and provided the redemption release from the sheriff's office.

39.     Defendant Ally released the Vehicle to Plaintiff.

40.     On or around May 16, 2016, Plaintiff made another payment to Defendant Ally.

**DEFENDANTS' JULY 2016 REPOSSESSION**

41.     On or around July 29, 2016, Plaintiff had fallen behind on his monthly payments under the Agreement.

42.     Sometime prior to July 29, 2016, Defendant Ally hired Defendant UAR to acquire Plaintiff's Vehicle through self-help repossession.

6

43.     On or around July 29, 2016, Defendant UAR, by and through one of its repossession agents, arrived at the Harriman Lane Address with a tow truck to conduct a self-help repossession of Plaintiff's Vehicle on behalf of Defendant Ally and at Defendant Ally's request.

44.     Defendant UAR, by and through one of its repossession agents, informed Plaintiff that it was there to repossess Plaintiff's Vehicle.

45.     Plaintiff informed Defendant UAR and/or its repossession agent that his Vehicle should not be repossessed and that the repossession was wrongful.

46.     Defendant UAR, by and through one of its repossession agents, hooked up Plaintiff's Vehicle to the tow truck and unlawfully repossessed Plaintiff's Vehicle.

47.     After Defendants repossessed Plaintiff's Vehicle, Plaintiff contacted Defendants regarding the return or release of his Vehicle.  In order to verify the account, Defendant Ally asked Plaintiff to verify the address on the account.  Plaintiff provided Defendant Ally the Harriman Lane Address.

48.     Again, Defendant Ally stated that it had the Nelson Avenue Address listed as the address on the account.

49.     Again, Plaintiff informed Defendant Ally: that he does not live at the Nelson Avenue Address; that he has never lived at the Nelson Avenue Address; that he did not know how Defendant Ally obtained the Nelson Avenue Address; and that he had explained this several times to Defendant Ally.

50.     Defendant Ally informed Plaintiff that he needed to pay approximately $4,413 in order to obtain the Vehicle.  The amount represented some past monthly payments, late fees, and costs associated with repossession.

51.     In addition, Defendants informed Plaintiff that he would need to obtain a redemption release from the sheriff's office prior to the release of the Vehicle.

52.     As such, Plaintiff paid Defendant Ally the requisite amount necessary to release the Vehicle and provided the redemption release from the sheriff's office.

53.     Thereafter, Plaintiff attempted to retrieve his Vehicle from Defendants but Plaintiff was informed that Defendants could not release the Vehicle until Defendant Ally provided Defendant UAR with the release paper work.

54.     Even though Defendant Ally had informed Plaintiff that the Vehicle would be released upon payment of $4,413 and despite the fact that Plaintiff actually paid Defendant Ally $4,413, Defendants refused to release the Vehicle.

55.     Even though Defendant Ally had informed Plaintiff that the Vehicle would be released upon the provision of the sheriff's redemption release and despite the fact that Plaintiff actually obtained and was able to provide the sheriff's redemption release, Defendants refused to release the Vehicle.

56.     After Plaintiff paid Defendant Ally $4,413, Defendant Ally informed Plaintiff that he needed to pay-off the entire balance of the Agreement in order to obtain the Vehicle.

8

57.     Plaintiff spent hours on the phone with Defendants – most of which was with Defendant Ally – arguing and pleading with Defendants to get them to release the Vehicle.  Nonetheless, Defendants continuously refused.

58.     Plaintiff spent a significant amount of time through Defendant Ally's tortuous phone-web system attempting to reach a representative to remedy the mistake.

59.     Each time Plaintiff called Defendant Ally, he was connected to a call-center representative in another country who either: lacked any authority to help Plaintiff; refused to help Plaintiff; and/or simply did not have any information to provide to Plaintiff.

60.     Defendant Ally provided little to no information to Plaintiff.

61.     Eventually, Plaintiff reached Defendant Ally's redemption department. The redemption department informed Plaintiff that he should be speaking with a gentleman by the name of Ramon.

62.     Defendant Ally informed Plaintiff that there was an open investigation into Plaintiff's account and that Ramon would be getting in touch with Plaintiff.

63.     Plaintiff attempted on several occasions to reach Ramon to no avail.

64.     As of the date of this Complaint, Plaintiff has not been able to reach Ramon or any helpful representative at Defendant Ally.

65.     Plaintiff attempted on several occasions to resolve the dispute with Defendant Ally, but Defendant Ally refused to comply.

66.     As of the date of this Complaint, neither Ramon nor a single representative of Defendant Ally has attempted to reach Plaintiff regarding Defendants' wrongful repossession.

67.     On several occasions, Plaintiff requested and demanded that Defendant Ally return the funds which he paid to allegedly release the Vehicle.  Defendant Ally refused to release the funds.

68.     As of the date of this Complaint, Defendant Ally has refused to return Plaintiff's $4,413 and has refused to release the Vehicle.

69.     At all relevant times, Plaintiff used his cellular telephone when calling Defendants.

70.     Defendants' conduct made Plaintiff extremely upset, agitated, anxious and confused.  Plaintiff could not understand why Defendants: took his Vehicle; refused to release the Vehicle; misrepresented the amount of money to pay; refused to return his money; and why Defendants would not provide any relevant or helpful information.

**CONTINUOUS ACCEPTANCE OF LATE PAYMENTS**

71.     Throughout the course of the Agreement and well before April 2016, Plaintiff made numerous, late, partial, and irregular payments (collectively "Late Payments") to Defendant Ally.

72.     The Late Payments were always accepted by Defendant Ally.

73.     Under Minnesota law, "the repeated acceptance of late payments by a creditor who has the contractual right to repossess the property imposes a duty on the

creditor to notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral." *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980); *see also Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

74. The notice which a secured party is required to send to a consumer is referred to as a "*Cobb* Notice." *See Id*.

75. Where a creditor has provided no notice of either intent to repossess or contract termination, and where no demand for payment in full has been made, repossession is wrongful as a matter of law. *See Id*.

76. Throughout the course of the Agreement Defendant Ally has never insisted upon strict compliance with payment due date.

77. After continuously and repeatedly accepting the Late Payments from Plaintiff, Defendant Ally failed to send Plaintiff a *Cobb* Notice at any time indicating potential repossession or demanding payment in full.

78. As of the date of this Complaint, Plaintiff has never received a *Cobb* Notice or any other notice from Defendant Ally. Defendant failed to send a *Cobb* Notice to the Harriman Lane address

79. Upon information and belief, Defendant failed to send a *Cobb* Notice to any address, let alone the Harriman Lane Address.

80. On or around August 2016, Plaintiff contacted Defendant Ally. In order to verify the account, Defendant Ally asked Plaintiff to verify the address on the account.

11

Plaintiff stated the Harriman Lane Address. This time, Defendant Ally accepted the

Harriman Lane Address as sufficient verification of the account and did not say anything

about the Nelson Avenue Address.

81.    During this August 2016 telephone call:

    a. Defendant Ally confirmed that it had sent correspondence to the Nelson Avenue Address as late as August 2, 2016 – which, was three days after Defendants wrongfully and unlawfully repossessed the Vehicle from Plaintiff's Harriman Lane Address;

    b. Defendant Ally also confirmed that it had the Nelson Avenue Address listed for Plaintiff as late as August 2016; and

    c. Defendant Ally informed Plaintiff that it did not have any other record of correspondence other than the August 2, 2016 correspondence – which was sent to the Nelson Avenue Address.

82.    With regards to notice requirements under the Minnesota UCC, giving

notice requires "taking such steps as may be reasonably required to inform the other

person in ordinary course, whether or not the other person actually comes to know of it."

*See* Minn. Stat. § 336.1-202(d).

83.    In addition, written notice must be "properly addressed." *See* Minn. Stat. §

336.1-201(b)(36); *see also Akerlund v. TCF Nat'l Bank of Minn.*, No. Civ. 99–1537, 2001

WL 1631440, at *3-4 (D. Minn. Jun. 11, 2001).

84.    On or around September 16, 2016, Defendant Ally sold Plaintiff's Vehicle.

Defendant Ally sold the Vehicle for less than what was allegedly owed to it under the

Agreement.

12

85.     On or around September 29, 2016, Defendant Ally sent written correspondence to the Harriman Lane Address notifying Plaintiff of the sale of his Vehicle.

86.     On or around December 2016, Defendant Ally sent written correspondence to the Harriman Lane Address attempting to collect the alleged remaining balance.

87.     In the Summer of 2016, Defendant Ally failed or refused to properly communicate with Plaintiff and failed or refused to help Plaintiff when Defendants wrongfully repossessed his Vehicle.

88.     However, in the Fall and Winter of 2016, when it came time to collect an alleged balance, Defendant Ally was suddenly able to properly communicate with Plaintiff.

89.     Plaintiff regularly uses his Vehicle for his job and various business ventures.

90.     Plaintiff is an outside salesman for a company that outsources toxicology services to medical professionals.  In addition, Plaintiff is involved in other entrepreneurial business ventures for which he uses his Vehicle.

91.     As such, Plaintiff needs a Vehicle for his job and other business ventures.

92.     As a result of Defendants' conduct, Plaintiff was unable to perform his job duties and he was unable to pursue other business ventures.  Plaintiff lost earnings, income, commissions and business opportunities as result of Defendants' conduct.

93.    Since at least August 2016, Defendant Ally has been reporting the repossession to all of the credit reporting agencies (commonly referred to as "credit bureaus") for which it reports to.

94.    According to Experian – one of the top three credit reporting agencies – vehicle repossession negatively affects a consumer's credit score.  *See Repossession* (December 24, 2016, 2:12 p.m.), http://www.experian.com/blogs/ask-experian/category/credit-advice/report-advice/report-details/repossession/.

95.    Defendant Ally's report of the wrongful repossession on Plaintiff's credit report negatively impacted Plaintiff's credit score.

96.    As outlined above, Defendants used false, deceptive and misleading representations or means in connection with the collection of the alleged debt and/or the enforcement of a security interest.  Defendants' conduct outlined above was unlawful, harassing, abusive, deceptive and misleading.

97.    As a result of Defendants' conduct, Defendants are liable under Minn. Stat. § 336.9-625.  *See Nelson, v. BMW Financial Services NA, LLC*, No. 0:15-cv-02261, 2015 WL 8328073, at *3 (D. Minn. Dec. 8, 2015); *see also Osborne v. Minnesota Recovery Bureau, Inc.*, 2006 WL 1314420, at *2 (D. Minn. 2006); *Akerlund,* 2001 WL 1631440, at *4.

98.    As a result of Defendants' conduct, Plaintiff has suffered both tangible and intangible injuries.  Specifically, Plaintiff has suffered harm because:

a.  Plaintiff has suffered monetary damages, emotional distress, stress, aggravation, anger, anxiety, embarrassment, humiliation, nuisance, inconvenience, and annoyance;

b.  Defendants caused Plaintiff to waste time by attempting to argue and plead with Defendants to release the Vehicle, wasting time on the phone with Defendants, and obtaining unnecessary documents;

c.  Plaintiff has been harassed and misled by Defendants' unlawful and wrongful collection efforts.  Defendants violated Plaintiff's right not be a target of unlawful, wrongful and misleading debt collection communications and conduct;

d.  Defendants caused Plaintiff to lose earnings, income, commissions and business opportunities;

e.  The time spent on the phone with Defendants diminished the capacity of Plaintiff's cellular telephone, battery, usage and memory;

f.  Defendants caused Plaintiff to pay Defendants more than what was owed and/or pay Defendants when no payment obligation existed;

g.  Plaintiff paid Defendants to release the Vehicle and Defendants refused to release the Vehicle;

h.  Defendants caused an intrusion upon and occupation of Plaintiff's property, specifically his Vehicle;

i.  Defendants' conduct interfered with and interrupted Plaintiff's use and enjoyment of his personal property, specifically his Vehicle;

j.  Plaintiff has incurred unnecessary costs, expenses and fees in his attempts to obtain the Vehicle;

k.  Plaintiff has incurred costs and expenses consulting with his attorneys as a result of Defendants' unlawful and wrongful collection efforts; and

l.  Defendants negatively affected Plaintiff's credit score, which impeded or is likely to impede Plaintiff's ability for lower-cost credit, to find a job, or find housing.

99.     All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## UNFAIR AND UNCONSIONABLE MEANS
## (DEFENDANT UAR)

100.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

101.     Defendant UAR used unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff and/or to enforce a security interest against Plaintiff.

102.     Defendant UAR took and/or threatened to take certain nonjudicial action to effect dispossession of Plaintiff's property when Defendant UAR had no present right to possession of the property which it claimed as collateral through an enforceable security interest.

103.     Specifically, Defendant UAR engaged in a self-help repossession of Plaintiff's Vehicle without the present legal right to possess and/or take Plaintiff's Vehicle.

104.     There is no present right to possession when a secured party fails to properly send the consumer a *Cobb* Notice.

105.     Defendant UAR's conduct violated 15 U.S.C. §§ 1692f and 1692f(6).

106.    As a result of Defendant UAR's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
## VIOLATIONS OF MINN. STAT. § 336.9-609
## UNLAWFUL REPOSSESSION
## (ALL DEFENDANTS)

107.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

108.    At all relevant times, Defendants had no present legal right to possess Plaintiff's Vehicle under Minn. Stat. § 336.9-609 – as that right has been defined and limited by *Cobb*, 295 N.W. 2d at 237.

109.    On or about July 29, 2016, Defendants conducted a self-help repossession of Plaintiff's Vehicle without a present right to possession of Plaintiff's Vehicle.

110.    As a result of Defendants' violations of Minn. Stat. § 336.9-609, Plaintiff is entitled to statutory damages in the amount of $28,578.59 and actual damages under Minn. Stat. § 336.9-625.

## COUNT III
## CONVERSION
## (ALL DEFENDANTS)

111.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

112.    At all relevant times, Plaintiff was entitled to the use and possession of his Vehicle.

113.    Defendants intentionally interfered with Plaintiff's use and possession of his property, without a claim of right, by unlawfully repossessing Plaintiff's Vehicle.

114.    Defendants intentionally interfered with Plaintiff's use, possession and enjoyment of his property by refusing Plaintiff possession of the Vehicle itself.

115.    Defendants converted Plaintiff's Vehicle for their own use and benefit by taking Plaintiff's Vehicle without his consent.

116.    Defendant Ally converted Plaintiff's Vehicle for its own use and benefit by selling Plaintiff's Vehicle and retaining the proceeds.

117.    Plaintiff has suffered an absolute deprivation of his property rights and is entitled to recovery for the full value of the Vehicle and the full value of loss of use of his property.

118.    As a direct and proximate result of Defendants' conversion, Plaintiff has been deprived of the use and possession of his Vehicle and damaged in an amount to be determined at trial.

## COUNT IV
## CIVIL THEFT
## (ALL DEFENDANTS)

119.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

120.    Defendants' actions of taking Plaintiff's vehicle without his consent constitute theft of personal property from Plaintiff.

121.    Defendant Ally's actions of taking Plaintiff's money by fraud and deceit constitute theft of personal property from Plaintiff.

18

122.    A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of up to 100 percent of its value when stolen.  Minn. Stat. § 604.14, subd. 1.

123.    Under Minn. Stat. § 604.14, and as a direct and proximate result of Defendants' theft, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT V
## FRAUD / MISREPRESENTATION
## (DEFENDANT ALLY)

124.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

125.    Defendant Ally misrepresented past or present material facts to Plaintiff by representing to Plaintiff: (a) that Defendants would release his Vehicle if he paid Defendant Ally $4,413 and (b) provided Defendants with a sheriff's redemption release.

126.    These representations were false.

127.    The facts that Defendant Ally misrepresented or concealed were susceptible to knowledge.

128.    At the time that Defendant Ally made the representations to Plaintiff, Defendant Ally knew them to be false, or should have known these representations were false.

129.    Defendant Ally made these false representations to Plaintiff with the intent to induce Plaintiff to act in reliance upon them, or under the circumstances where Plaintiff was justified in relying upon them.

130.    Plaintiff did reasonably and justifiably rely on Defendant Ally's false representations by immediately paying $4,413 to Defendant Ally and by obtaining a sheriff's redemption release.

131.    As a direct and proximate result of Defendant Ally's misrepresentations and Plaintiff's reasonable reliance, Plaintiff has been damaged in an amount to be determined at trial.

## JURY DEMAND

132.    Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff William A. Shell, II demands a trial by jury and prays for judgment against Defendant Ally Financial Inc. *d/b/a* Ally Financial, Defendant United Auto Delivery and Recovery, Inc. *d/b/a* United Auto Recovery *d/b/a* UAR Nationwide as follows:

1. Awarding judgment against Defendants in an amount to be determined at trial;

2. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant UAR;

3. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

4. Awarding Plaintiff damages against Defendants caused by Defendants' complete conversion of Plaintiff's property;

5. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 604.14 against Defendants for the theft of Plaintiff's Vehicle;

6.  Awarding Plaintiff actual damages and statutory damages under Minn. Stat. §

604.14 against Defendant Ally for the theft of Plaintiff's money;

7.  Awarding Plaintiff damages against Defendant Ally for fraudulently obtaining

Plaintiff's money;

8.  Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable

attorneys' fees; and

9.  Awarding Plaintiff such other and further relief as the Court deems proper, just

and equitable.

**TARSHISH CODY, PLC**

Dated:  January 2, 2017                By:    s/ Adam R. Strauss
                                              Adam R. Strauss (#0390942)
                                              ars@attorneysinmn.com
                                              Scott M. Cody (#0392137)
                                              scody@attorneysinmn.com
                                              6337 Penn Avenue South
                                              Minneapolis, Minnesota 55423
                                              Telephone: (952) 361-5556
                                              Facsimile: (952) 361-5559
                                              **ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff William A. Shell, II, verifies, certifies, and declares under penalty of perjury, as follows:

1.   I am a Plaintiff in this civil proceeding.
2.   I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.   I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.   I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.   I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


EXECUTED ON  ____1____   ___2___ , __2017__
                     Month          Day        Year


_____
**WILLIAM A. SHELL, II**

22